IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆ ◆ ◆

GRAY TELEVISION, INC.,

*Petitioner,*

—v.—

FEDERAL COMMUNICATIONS COMMISSION, UNITED STATES OF AMERICA,

*Respondents.*

ON PETITION FOR REVIEW FROM THE
FEDERAL COMMUNICATIONS COMMISSION

## OPENING SUPPLEMENTAL BRIEF FOR PETITIONER

DAVID E. MILLS
ROBERT M. MCDOWELL
ROBBY LEE RAY SALDAÑA
COOLEY, LLP
1299 Pennsylvania Avenue NW,
 Suite 700
Washington, DC 20004

*Attorneys for Petitioner
 Gray Television, Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 through 26.1-3, Petitioner Gray Television, Inc. ("Petitioner" or "Gray") submits the following Certificate of Interested Persons and Corporate Disclosure Statement.

To the best of Petitioner's knowledge, the following is a list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.    Atlanta Assembly, LLC, *Subsidiary of Gray Local Media, Inc.*

2.    Citrin, Sarah E., *Counsel for Respondent Federal Communications Commission*

3.    Cooley LLP, *Counsel for Petitioner*

4.    Dynamic Captioning, LLC, *Subsidiary of Gray Local Media, Inc.*

5.    Federal Communications Commission, *Respondent*

6.    Feore, John R., Cooley LLP (Retired), *Counsel for Gray Television, Inc. (Forfeiture Proceeding)*

7.    Folliard III, Robert J., *Gray Television, Inc., Senior Vice President of*

*Government Relations & Distribution*

8. Gray Local Media, Inc., *Subsidiary of Petitioner*

9. Gray Television, Inc. (GTN), *Petitioner*

10. Gray Television Licensee, LLC, *Subsidiary of Gray Local Media, Inc.*

11. Joslin, William P., *Gray Local Media, Inc., Assistant General Counsel and Assistant Secretary*

12. Kreisman, Barbara A., *Federal Communications Commission, Chief – Video Division, Media Bureau*

13. Latek, Kevin P., *Gray Television, Inc., Executive Vice President and Chief Legal and Development Officer*

14. McDowell, Robert M., *Cooley LLP, Counsel for Petitioner*

15. Miller, Keith S., *Gray Television, Inc., Vice President, Assistant General Counsel*

16. Mills, David E., *Cooley LLP, Counsel for Petitioner*

17. Nicholson, Robert B., *Counsel for Respondent United States of America*

18. PowerNation Studios, LLC, *Subsidiary of Gray Local Media, Inc.*

19. Rademacher, Jason E., *Counsel for Gray Television, Inc. (Forfeiture Proceeding)*

20. Raycom Sports Network, LLC, *Subsidiary of Gray Local Media, Inc.*

21. Saldaña, Robby L.R., *Cooley LLP, Counsel for Petitioner*

22. Scher, William J., *Counsel for Respondent Federal Communications Commission*

23. Stewart, Joan, *Wiley Rein LLP, Counsel for Gray Television, Inc.*

24. Tupelo Media Group, LLC, *Subsidiary of Gray Local Media, Inc.*

25. United States of America, *Respondent*

26. Wendel, Henry H., *Cooley LLP, Counsel for Gray Television Licensee, LLC*

To the best of Petitioner's current knowledge, no other persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this case or appeal.

*/s/ David E. Mills*
David E. Mills
Robert M. McDowell
Robby L.R. Saldaña
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
dmills@cooley.com
rmcdowell@cooley.com
rsaldana@cooley.com

*Counsel for Petitioner*
*Gray Television, Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................i

TABLE OF CITATIONS ....................................................................................... ii

SUPPLEMENTAL STATEMENT OF THE ISSUES ...........................................1

INTRODUCTION ...................................................................................................1

ARGUMENT ...........................................................................................................4

I.  *LOPER BRIGHT* REQUIRES RESOLVING THRESHOLD
    QUESTIONS ABOUT THE FCC'S STATUTORY AUTHORITY
    WITHOUT GIVING DEFERENCE TO THE FCC. ...................................4

II. THE FCC'S VIEW OF ITS STATUTORY AUTHORITY TO
    PROMULGATE NOTE 11 SHOULD RECEIVE NO "RESPECT". ...........8

    A.  The FCC's Statutory Interpretation Should Receive No
        "Weight" Under *Skidmore*. ...................................................................9

    B.  The FCC Has Identified No Contemporary or Consistent
        Interpretation of Its Statutory Authority. ...........................................10

III. THE COURT OWES NO DEFERENCE TO THE FCC ON THE
     QUESTION OF LAW CONCERNING NOTE 11'S MEANING. .............11

    A.  *Loper Bright* Bars Deference to the FCC's Interpretation of
        Note 11. ...............................................................................................11

    B.  The Best Reading of Note 11 Confirms that Gray Did Not
        Violate the Regulation. .......................................................................14

CONCLUSION ......................................................................................................15

CERTIFICATION OF COMPLIANCE WITH FRAP 32(G)(1) ...........................17

# TABLE OF CITATIONS

## Cases

*Am. Library Ass'n v. FCC,*
    406 F.3d 689 (D.C. Cir. 2005)............................................................10

*Auer v. Robbins,*
    519 U.S. 452 (1997)............................................................1, 13, 14

*Autauga Cty. Emergency Mgmt. Commun. Dist. V. FCC,*
    17 F.4th 88 (11th Cir. 2021) ............................................................3, 12

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984)............................................................*passim*

*Comcast Corp. v. FCC,*
    600 F.3d 642 (D.C. Cir. 2010)............................................................10

*Kisor v. Wilkie,*
    585 U.S. 558 (2019)............................................................12, 13

*Loper Bright Enterprises v. Raimondo,*
    144 S. Ct. 2244 (2024)............................................................*passim*

*Lopez-Elias v. Reno,*
    209 F.3d 788 (5th Cir. 2000), *cert. denied*, 531 U.S. 1069 (2001) ......................7

*M2Z Networks Inc. v. FCC,*
    558 F.3d 554 (D.C. Cir. 2009)............................................................7

*Motion Picture Ass'n of Am. v. FCC,*
    309 F.3d 796 (D.C. Cir. 2002)............................................................10

*Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.,*
    797 F.3d 1302 (11th Cir. 2015) ............................................................12

*Office of Communication of United Church of Christ v. FCC,*
    465 F.2d 519 (D.C. Cir. 1972)............................................................7

*Ramirez v. Sec'y, Dep't of Transp.,*
    686 F.3d 1239 (11th Cir. 2012) ............................................................8

*Shweika v. Dep't of Homeland Sec.*,
    723 F.3d 710 (6th Cir. 2013) ................................................................6

*Skidmore v. Swift & Co.*,
    323 U. S. 134 (1944)...........................................................3, 4, 8, 9

*United States v. St. Amour*,
    886 F.3d 1009 (11th Cir. 2018) .......................................................14

**Statutes**

5 U.S.C. § 706 .........................................................................5, 12, 14

47 U.S.C.
    § 310(d) ...................................................................................*passim*
    § 405(a) .............................................................................3, 6, 7

**FCC Rulemakings**

*In the Matter of 2014 Quadrennial Regul. Rev. F Rev. of the*
    *Commission's Broad. Ownership Rules & Other Rules Adopted*
    *Pursuant to Section 202 of the Telecommunications Act of 1996*,
    29 F.C.C.R. 4371 (2014)....................................................................9

*2014 Quadrennial Regulatory Review – Review of the FCC's*
    *Broadcast Ownership Rules and Other Rules Adopted Pursuant to*
    *Section 202 of the Telecommunications Act of 1996 et al.*,
    31 F.C.C.R. 9864 (2016).............................................................7, 10

**Other Authorities**

47 C.F.R.
    § 73.3555(b)(1)(ii) .........................................................................15
    § 73.3555 n.11................................................................................14

Black's Law Dictionary, *Result* (10th ed. 2014) .................................15

## SUPPLEMENTAL STATEMENT OF THE ISSUES

1.  Whether and to what extent *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ("*Loper Bright*"), impacts the analysis on the appropriate deference to afford the FCC's interpretation of Note 11 in this case?

2.  Whether, under *Loper Bright*, the Court should decline to afford any respect to the FCC's view that it had statutory authority to promulgate Note 11?

3.  Whether *Loper Bright* requires the Court to independently review the questions of law concerning Note 11's meaning notwithstanding *Auer v. Robbins*, 519 U.S. 452 (1997)?

## INTRODUCTION

Gray seeks vacatur of the FCC's Forfeiture Order, which imposed an unprecedented maximum statutory forfeiture penalty on Gray for a purported violation of Note 11—a regulation the FCC adopted in 2016 for the purpose of prohibiting so-called "swap" transactions.[1]

In its Petition, Gray asks this Court to resolve the threshold question of whether the specific and defined authority over license transfers that Congress delegated to the FCC in 47 U.S.C. § 310(d) authorizes Note 11 or permits its application to the Anchorage Transaction—a transaction that involved ***no*** license

---

[1] In this supplemental brief, Gray incorporates all defined terms from its Opening Brief ("O.B."), Dkt. No. 21, and its Reply Brief ("R.B."), Dkt. No. 35.

transfer.  Gray has explained why § 310(d) does not authorize Note 11 and why the FCC's reliance on "ancillary rulemaking authority" to justify Note 11 and the Forfeiture Order was improper.  Beyond this fundamental question of statutory authority, Gray has also explained that the Forfeiture Order is invalid under Note 11's plain language and, even if the regulation were ambiguous, the FCC failed to provide Gray with fair notice, thereby running afoul of basic due process principles.

Following oral argument, the Supreme Court decided *Loper Bright*—where the Court was asked to overrule the judicially created deference doctrine established in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  That doctrine required federal courts to defer to reasonable agency interpretations of statutes administered by the agency when the statute was silent or ambiguous on the issue before the court.  As the Supreme Court has now explained, the Administrative Procedure Act ("APA") "prescribes ***no*** deferential standard … to employ in answering … legal questions." *Loper Bright*, 144 S. Ct. at 2261 (emphasis added).  The Court unequivocally held that "*Chevron* is overruled.  Courts ***must*** exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id*. at 2273 (emphasis added).

*Loper Bright* controls resolution of several issues in this appeal.  As an initial matter, the parties agree, and the case law explains, that the APA's standards govern review of an FCC order under the Hobbs Act.  O.B. 17–18; Dkt. No. 32, Answering

Brief ("A.B.") 14–15; *see Autauga Cty. Emergency Mgmt. Commun. Dist. v. FCC*, 17 F.4th 88, 98 (11th Cir. 2021).

*Loper Bright* and its reasoning confirm that the Court should vacate the Forfeiture Order for three reasons. *First*, *Loper Bright* requires that—before proceeding to address the FCC's interpretation of Note 11—this Court must address the threshold statutory question of whether Congress delegated authority to the FCC to promulgate Note 11 and must ensure the agency has acted within the bounds of any delegated authority. In doing so, the Court must conduct an independent review of whether there is statutory authority for the agency action and cannot defer to the FCC. The FCC's assertion that 47 U.S.C. § 405(a) deprives this Court of jurisdiction to consider this issue cannot preclude this review under *Loper Bright*, because § 405(a) is not jurisdictional and its requirements for judicial review are otherwise satisfied. The FCC's further assertion that the Court need not address this threshold statutory authority issue cannot be squared with the reasoning of *Loper Bright*.

*Second*, the FCC's interpretation of its statutory authority to promulgate Note 11 is entitled to no respect. *Loper Bright* permits "respect" to an agency interpretation of a statute's meaning only pursuant to the considerations set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ("*Skidmore*"), or "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time." *Loper Bright*, 144 S. Ct. at 2262. The FCC's views of its

statutory authority are not persuasive under the *Skidmore* considerations, and the FCC has no contemporaneous or consistent position that could justify Note 11.

*Third*, even assuming *arguendo* that Note 11 somehow falls within the scope of authority that Congress delegated to the FCC (it does not), that assumption would not salvage the FCC's interpretation of Note 11. The Court's basic instruction in *Loper Bright* is clear: under the APA, courts reviewing agency action must **independently** review **all questions of law**, without deferring to the agency. The questions regarding Note 11's scope and meaning are quintessentially legal questions that this Court should decide without deference to the Commission.

## ARGUMENT

I. **LOPER BRIGHT REQUIRES RESOLVING THRESHOLD QUESTIONS ABOUT THE FCC'S STATUTORY AUTHORITY WITHOUT GIVING DEFERENCE TO THE FCC.**

As a threshold matter, *Loper Bright* mandates that—**before** addressing the propriety of the FCC's interpretation of Note 11 (if that even becomes necessary)—this Court must resolve the statutory question presented in the Petition of whether the FCC had statutory authority under § 310(d) to promulgate and enforce Note 11. The FCC's assertions in prior briefing to the Court cannot override this mandate.

In *Loper Bright*, the Supreme Court considered whether to overrule *Chevron* deference in the context of challenges to a regulation promulgated by a federal agency enforcing the Magnuson-Stevens Fishery Conservation and Management

Act ("MSA").  144 S. Ct. at 2254.  The agency promulgated a regulation that required certain vessels to pay the costs of government-certified third-party observers with respect to the Atlantic herring fishery even though the MSA "does not contain … terms" requiring payment of such costs.  *Id.* at 2255.  The First Circuit and the D.C. Circuit relied on *Chevron* deference to uphold the regulation and rejected challenges that the agency lacked statutory authority.  *Id*. at 2256–57.  The Supreme Court reversed.

In overruling *Chevron*, the Court emphatically stated that "[t]he text of the APA means what it says."  *Id.* at 2262.  In particular, "[t]he APA … codifies for agency cases the … elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment.  It specifies that courts, not agencies, will decide '***all relevant questions of law***' arising on review of agency action."  *Id.* at 2261 (citing 5 U.S.C. § 706) (emphasis added).

The Court recognized that Congress sometimes may "expressly delegate[ ] to an agency the authority to give meaning to a particular statutory term," "to prescribe rules to fill up the details of a statutory scheme," or "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility … such as appropriate or reasonable."  144 S. Ct. at 2263 (citations and internal quotation marks omitted).  But even "[w]hen the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA

is, as always, to **independently** interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id*. (emphasis added). As the Court explained, "[t]he court fulfills that role by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." *Id*. (citations and internal quotation marks omitted).

Consistent with the review the APA mandates, as clarified by *Loper Bright*, the Petition asks this Court to resolve in the first instance the fundamental question of whether there is statutory authority for Note 11. As Gray has explained in detail, § 310(d)—which governs license transfers—does not provide the authority the FCC asserts in Note 11 and the Forfeiture Order. O.B. 22–25; R.B. 6–11. *Loper Bright* requires this Court to resolve these questions.

The requisite *Loper Bright* inquiry under the APA also cannot be avoided by relying on the FCC's arguments that the Court lacks jurisdiction under 47 U.S.C. § 405(a) or that Gray waived the statutory issue.

First, the FCC's cursory assertion that this Court purportedly lacks jurisdiction under 47 U.S.C. § 405(a) to consider Gray's statutory arguments is unpersuasive. A.B. 13, 26. Even under the now-defunct *Chevron* deference regime, this Court **never** owed deference to an agency's interpretation of federal statutes governing judicial review or federal court jurisdiction. *E.g.*, *Shweika v. Dep't of Homeland*

*Sec.*, 723 F.3d 710, 718 (6th Cir. 2013) ("*Chevron* deference does not apply to an agency's interpretation of a federal court's jurisdiction."); *Lopez-Elias v. Reno*, 209 F.3d 788, 791 (5th Cir. 2000) ("[T]he determination of our jurisdiction is exclusively for the court to decide."), *cert. denied*, 531 U.S. 1069 (2001).

As Gray has explained, Supreme Court precedent and other authority confirm that § 405(a) is not jurisdictional. R.B. 4–5; *see also M2Z Networks Inc. v. FCC*, 558 F.3d 554, 558 (D.C. Cir. 2009). Gray has also explained that § 405(a)'s requirement that the FCC be afforded an opportunity to pass on an issue as a prerequisite to judicial review is satisfied here. Section 405(a) does not require that the issue be raised by a particular party or in a particular manner. *See Office of Communic'n of United Church of Christ v. FCC*, 465 F.2d 519, 523 (D.C. Cir. 1972). Consistent with § 405(a), Gray's response to the NAL challenged the FCC's reliance on both § 310(d) and its ancillary authority as insufficient grounds for the FCC's proposed forfeiture. A58, 60. Even if that were not alone sufficient (it is), the FCC had ***already*** addressed the question of the statutory authority for Note 11 in 2016—years before the FCC issued the Forfeiture Order.[2] R.B. 4, 6. Because the FCC already passed on the statutory question raised in this Petition, § 405(a)'s

---

[2] *14 Quadrennial Regulatory Review – Review of the FCC's Broadcast Ownership Rules and Other Rules Adopted Pursuant to Section 202 of the Telecommunications Act of 1996*, 31 F.C.C.R. 9864, 9882 n.122 (2016) ("Second Order"). Raising these statutory arguments again would have been futile given the FCC's prior statements regarding its authority during the promulgation of Note 11.

requirements are met.

Second, the FCC fares no better under *Loper Bright* in arguing that the Court should not address Gray's statutory arguments because appellate courts, as a matter of judicial discretion, typically decline to address an issue raised for the first time on appeal (even assuming that were the case here). A.B. 26 (citing *Ramirez v. Sec'y, Dep't of Transp.*, 686 F.3d 1239, 1250 (11th Cir. 2012)). As *Loper Bright* underscores, a judge-made rule cannot supplant a court's duty under the APA to review all questions of law that arise from agency action. *See Loper Bright*, 144 S. Ct. at 2272 ("*Chevron* was a judicial invention that required judges to disregard their statutory duties."). Thus, under *Loper Bright*, this Court must resolve whether the FCC had statutory authority to promulgate Note 11 or to enforce it against Gray.

## II. THE FCC'S VIEW OF ITS STATUTORY AUTHORITY TO PROMULGATE NOTE 11 SHOULD RECEIVE NO "RESPECT".

The FCC's interpretation of its statutory authority to promulgate Note 11 should receive no "respect" under the narrowly circumscribed situations the Court left open in *Loper Bright* for judicial consideration of an agency's views on its statutory authority. The FCC's interpretation does not satisfy the *Skidmore* considerations for determining the persuasive value, if any, of an agency interpretation of a statute, nor can the FCC identify "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time." *Loper Bright*, 144 S. Ct. at 2262.

8

## A. The FCC's Statutory Interpretation Should Receive No "Weight" Under *Skidmore*.

Under *Skidmore*, the "weight" of a federal agency's interpretation of a statute administered by the agency "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U. S. at 140. The FCC has never relied on *Skidmore* to defend its claim of statutory authority to promulgate Note 11. Even if the Court addresses the *Skidmore* considerations, the Court should afford no weight to the FCC's views because they are fundamentally unpersuasive.

The FCC's assertion that it had authority to promulgate Note 11 is incorrect and is belied by the FCC's own pronouncements. In Note 11 and the Forfeiture Order, the FCC purports to regulate the so-called "functional equivalent" of a license transfer. The only authority Congress delegated to the FCC over license transfers is set forth plainly in § 310(d). As the FCC conceded nearly 10 years ago, it **lacks** § 310(d) authority in cases that "do not involve the assignment or transfer of a station license."[3] The FCC cannot elide its own concession—made in the course of promulgating Note 11 itself—by now contending that Congress purportedly

---

[3] *In the Matter of 2014 Quadrennial Regul. Rev. F Rev. of the Commission's Broad. Ownership Rules & Other Rules Adopted Pursuant to Section 202 of the Telecommunications Act of 1996*, 29 F.C.C.R. 4371, 4391 ¶ 47 (2014) ("*FNPRM*").

authorized Note 11 as part of a broad, generalized "licensing authority 'that supports all of [the] broadcast ownership rules.'" A.B. 34–35 (citations omitted). And while the FCC has cited cases upholding its broadcast ownership rules as valid regulation of license applications and transfers, none of those cases upheld the FCC's authority to enact Note 11 or to enforce it as a valid exercise of the FCC's statutory authority.

The FCC's reliance on ancillary authority under §§ 154(i) and 303(r) fares no better under *Loper Bright*. A.B. 34–35. The FCC cited these provisions when it promulgated Note 11,[4] and it cited them in the Forfeiture Order, A11. The FCC's views on these statutory provisions are also entitled to no weight. As Gray has explained, these statutory provisions merely allow the FCC to make rules necessary to carry out duties authorized under other provisions of the Act. O.B. 19. Federal courts have repeatedly rejected the FCC's efforts to create new agency authority under the guise of §§ 154(i) and 303(r). *E.g., Comcast Corp. v. FCC*, 600 F.3d 642, 661 (D.C. Cir. 2010); *Am. Library Ass'n v. FCC*, 406 F.3d 689, 692 (D.C. Cir. 2005); *Motion Picture Ass'n of Am. v. FCC*, 309 F.3d 796, 806 (D.C. Cir. 2002). *Loper Bright* leaves no room for doubt on this issue.

### B. The FCC Has Identified No Contemporary or Consistent Interpretation of Its Statutory Authority.

The FCC also cannot earn "respect" for its views on its statutory authority to

---

[4] Second Order, 31 F.C.C.R. at 9882 ¶ 47 n.122 (same).

promulgate Note 11 on the ground that they represent contemporaneous or consistent agency interpretations of statutory authority. *Loper Bright*, 144 S. Ct. at 2262. The FCC has not identified a single statement by the agency regarding its authority under § 310(d) that is contemporaneous with the enactment of § 310(d). In fact, as discussed above, the FCC did not even rely on § 310(d) as the authority for Note 11. The FCC instead relied on its general rulemaking authority under §§ 303(r) and 154(i) when it promulgated Note 11, and the FCC has not identified any contemporaneous or consistently held view that these provisions authorize it to regulate transactions that do not involve a license transfer. The FCC simply has not identified any agency interpretation that this Court could respect under *Loper Bright*.

## III.   THE COURT OWES NO DEFERENCE TO THE FCC ON THE QUESTION OF LAW CONCERNING NOTE 11'S MEANING.

Even if the Court were to consider the FCC's interpretation of Note 11 (it need not do so), the Court should conclude that it owes no deference to the FCC's interpretation. Reviewing Note 11 without deference to the FCC's shifting and conveniently expanding positions about what Note 11 prohibits is fatal to the Forfeiture Order.

### A.   *Loper Bright* Bars Deference to the FCC's Interpretation of Note 11.

Although *Loper Bright* did not involve an agency interpretation of its own regulations, the Court's analysis is controlling here. The APA's review standards

govern this appeal.  *See Autauga*, 17 F.4th at 98.  As *Loper Bright* holds, the APA

"specifies that courts, not agencies, will decide 'all relevant questions of law' arising

on review of agency action."  144 S. Ct. at 2261.  A regulation adopted pursuant to

notice-and-comment procedures, like Note 11, carries the force of law.  *See Kisor v.*

*Wilkie*, 585 U.S. 558, 607 (2019) (explaining that a regulation "carries the force of

law" when adopted pursuant to notice-and-comment procedures) (Gorsuch, J.,

concurring); *see also Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.*, 797 F.3d

1302, 1307 (11th Cir. 2015) ("FCC orders adopted by the [FCC] in the avowed

exercise of its rule-making power that affect or determine rights generally . . . have

the force of law . . ." (internal quotation marks and citation omitted)).  It necessarily

follows that what such a regulation requires is a question of law.  *Kisor*, 585 U.S. at

604 ("Determining the meaning of a statute or regulation, of course, presents a

classic legal question.").  Thus, under the APA, this Court must independently

resolve the meaning and scope of Note 11 without deferring to the FCC.

*Loper Bright* recognized that deferential APA review may still be appropriate

for policymaking and factual findings, *see* 144 S. Ct. at 2261 ("Section 706 does

mandate that judicial review of agency policymaking and factfinding be

deferential."), but neither of these is applicable here.  The FCC's interpretation and

**application** of Note 11 in the Forfeiture Order are legal determinations, not

factfinding or policymaking.  As the Court explained in *Loper Bright* when rejecting

the government's argument that interpretation of statutory ambiguities "amounts to policymaking," "legal interpretation" is not policymaking. *See* 144 S. Ct. at 2267–28. Just as *Loper Bright* requires courts to make legal interpretations to resolve statutory ambiguities, *id.*, logically it requires courts to make legal interpretations of purportedly ambiguous regulations.

The so-called "*Auer* doctrine" also does not warrant deference to the FCC's interpretation of Note 11. In *Auer*, the Supreme Court opined that courts could defer to agency interpretations of their own rules so long as the interpretation is reasonable, not plainly erroneous, and does not contradict the text of the rule itself. *Auer*, 519 U.S. at 452. The Supreme Court substantially limited *Auer* deference in *Kisor*, holding that "a court should not afford *Auer* deference unless, after exhausting all the 'traditional tools' of construction, … the regulation is genuinely ambiguous." *Id.* at 574 (citation omitted). The Court held that, even when the regulation is genuinely ambiguous, a court's deference to the agency's interpretation is subject to several limitations. *See id.* at 576–79. Here, the FCC has specifically relied on *Kisor* to defend its interpretation of its ratings rules to reject Gray's July 2020 Comscore ratings data for KYES-TV. A.B. 21.

However, the reasoning in *Kisor* that allowed judicial deference to an agency on interpreting its own ambiguous regulations is no longer viable in this case under the holding of *Loper Bright*. The plurality opinion in *Kisor* opined that "courts do

not violate Section 706 by applying *Auer*," but rather "they fulfill their duty to 'determine the meaning' of a rule precisely by deferring to the agency's reasonable reading." *Id.* at 582 (Kagan, J.). That assertion is incompatible with *Loper Bright*'s determination that *Chevron* deference "defies the command of the APA that 'the reviewing court'—not the agency whose action it reviews—is to 'decide *all relevant questions of law.*'" 144 S. Ct. at 2265 (emphasis added). Once regulations have the force of law and an agency uses them to deprive individuals of liberty or property, like the FCC's maximum forfeiture imposed in this case, the meaning of those regulations becomes a question of law that is within the province of the judiciary to interpret under *Loper Bright* without deference to the agency's views. Thus, this Court must decide all questions of law under § 706 without deference to the FCC.

### B. The Best Reading of Note 11 Confirms that Gray Did Not Violate the Regulation.

Under the reasoning of *Loper Bright*, with no deference afforded to the FCC, this Court must employ traditional canons of statutory interpretation to ascertain the best meaning of Note 11. 144 S. Ct. at 2271. When the "language at issue has a plain and unambiguous meaning," the Court "need go no further." *United States v. St. Amour*, 886 F.3d 1009, 1013 (11th Cir. 2018). As Gray has explained, ordinary tools of construction confirm that Note 11 requires that a "change in network affiliation" must "*result in*" ownership of "*two of the top-four rated* television stations in the DMA at the time of the agreement." 47 C.F.R. 73.3555 n.11 (emphasis

added).[5]  O.B. 35-36; R.B. 17–18.  The ordinary meaning of the verb "result" in 2016, when the FCC adopted Note 11, was "[t]o be a physical, logical, or legal consequence; to proceed as an outcome or conclusion." Black's Law Dictionary, *Result* (10th ed. 2014).  And, to make this determination, the Second Order (to which Note 11 refers) instructs that the FCC must use the relevant ranking method in 47 C.F.R. § 73.3555(b)(1)(ii) and apply it "at the time of the agreement."  R.B. 15–16.

Applying these principles, the Anchorage Transaction plainly did not violate Note 11.  Gray already owned two top-four stations at the time of the Anchorage Transaction, as confirmed by the July 2020 Comscore data.  A32, 34.  The FCC's reliance on June 2020 Nielsen ratings data clearly fails to consider the data "at the time of the agreement" and is therefore contrary to Note 11.  A5.  As Commissioner Simington aptly recognized, A17–18,  the Anchorage Transaction did ***not result in*** Gray owning two top-four stations in violation of the regulation because Gray ***already*** owned two top-four stations at the time of the Anchorage Transaction.

## CONCLUSION

For the foregoing reasons and those set forth in Gray's opening and reply briefs, Gray requests that the Court grant the Petition and vacate the Forfeiture Order.

---

[5] Even if the FCC's view of Note 11's "best meaning" were adopted here, that would not preclude vacatur of the Forfeiture Order due to the FCC's failure to give fair notice to Gray before seeking to impose a penalty.  O.B. 40–46; R.B. 20–23.

Dated:  July 24, 2024

Respectfully submitted,

*/s/ David E. Mills*
David E. Mills
Robert M. McDowell
Robby L.R. Saldaña
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
dmills@cooley.com
rmcdowell@cooley.com
rsaldana@cooley.com

*Counsel for Petitioner*
*Gray Television, Inc.*

# CERTIFICATION OF COMPLIANCE WITH FRAP 32(g)(1)

Undersigned counsel certifies that this Supplemental Brief complies with the applicable type volume limitations in Rule 32(a)(7). This brief complies with the typeface and type style requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface using font size 14 Times New Roman.

Pursuant to the Court's order directing the parties to file supplemental briefs, the body of this opening supplemental brief does not exceed 15 pages. This page count excludes the title page, certificate of interested persons and corporate disclosure statement, table of contents, table of authorities, signature block, certificate of service, and this certification.

Dated: July 24, 2024

*/s/ David E. Mills*

David E. Mills
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
dmills@cooley.com

*Counsel for Petitioner*
*Gray Television, Inc*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2024, I served the foregoing document on all parties through the appellate CM/ECF system for the United States Court of Appeals for the Eleventh Circuit.

/s/ David E. Mills
David E. Mills
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
dmills@cooley.com

*Counsel for Petitioner*
*Gray Television, Inc.*