No. 22-14274

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

GRAY TELEVISION, INC.,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*.

On Petition for Review of an Order of
the Federal Communications Commission

## RESPONDENTS' OPPOSITION TO MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING

## INTRODUCTION

The Federal Communications Commission and United States of America hereby oppose Petitioner Gray Television, Inc.'s Motion for Leave to File Supplemental Briefing, filed August 14, 2024. ECF No. 61 ("Mot."). Invoking the Supreme Court's recent decision in *Securities & Exchange Commission v. Jarkesy*, 144 S. Ct. 2117 (2024), Gray seeks leave for supplemental briefing on "whether the FCC had the authority . . . to conduct the proceeding that led to the forfeiture" contested here. Mot. 2. That is a wholly new issue in this case. Although Gray could

have raised constitutional objections to the FCC's enforcement procedures from the outset of the agency's proceeding—when the *Jarkesy* litigation was already underway in the Fifth Circuit—it elected not to do so. Nor did Gray challenge the FCC's enforcement procedures in its opening brief to this Court. Instead, Gray waited until six weeks after the Supreme Court's decision in *Jarkesy*—when this case had long been briefed and argued—to seek leave to challenge the FCC's enforcement procedures for the first time. In these circumstances, as Circuit precedent makes clear, Gray's motion should be denied.

**BACKGROUND**

The *Order* under review arises from a proceeding that the FCC commenced on July 7, 2021, through a notice of apparent liability advising Gray of the Commission's tentative determination that Gray had violated Note 11 to Section 73.3555 of the agency's broadcast ownership rules, 47 U.S.C. § 73.3555. A74. Gray responded in writing to that notice on August 6, 2021. A19. On November 1, 2022, having considered Gray's response, the FCC issued its *Order* directing Gray to pay a monetary forfeiture. A1.

Gray did not then—or at any other time during the administrative proceeding—challenge the FCC's authority to impose a monetary forfeiture through these statutorily authorized procedures. *See* 47 U.S.C. § 503(b)(1)(B), (b)(4)

(authorizing the FCC to issue a monetary forfeiture after furnishing a notice of apparent liability); *see also* 47 C.F.R. § 1.80(a), (g) (implementing Section 503(b)).

The *Jarkesy* litigation commenced in the Fifth Circuit on November 2, 2020. *See* Pet. for Review, ECF No. 1, *Jarkesy v. SEC*, No. 20-61007 (5th Cir.). The Fifth Circuit case was fully briefed by June 7, 2021—a month before the FCC issued its notice of apparent liability to Gray in this case. *See* Reply Br., ECF No. 75, *Jarkesy v. SEC*, No. 20-61007 (5th Cir.). The Fifth Circuit issued its decision on May 18, 2022, and denied en banc rehearing on October 21, 2022—before the FCC issued the *Order* under review. *See* Opinion, ECF No. 122, *Jarkesy v. SEC*, No. 20-61007 (5th Cir.); Rehearing Denial Order, ECF No. 142, *Jarkesy v. SEC*, No. 20-61007 (5th Cir.).

The Supreme Court granted certiorari in *Jarkesy* on June 30, 2023. *See SEC v. Jarkesy*, 143 S. Ct. 2688 (June 30, 2023). Merits briefing began on August 28, 2023; oral argument took place on November 29, 2023; and the Court issued its decision, affirming the Fifth Circuit, on June 27, 2024. *See* Docket, *SEC v. Jarkesy*, No. 22-859 (S. Ct.).[1]

Meanwhile, on December 28, 2022, Gray petitioned this Court for review of the FCC's *Order*. ECF No. 1. Gray filed its opening brief on May 24, 2023, ECF

---

[1] The Supreme Court docket is available at https://perma.cc/T69T-S3QV.

No. 21, and its reply brief on September 13, 2023, ECF No. 35. This Court heard oral argument on May 15, 2024. ECF No. 55.

Following oral argument, the Court directed the parties to submit supplemental briefing on another recent Supreme Court decision, *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). *Loper Bright* overruled *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837 (1984), which had previously bound courts to afford deference to agencies' interpretations of ambiguous provisions in their organic statutes. This Court directed the parties to provide supplemental briefing on "whether and to what extent *Loper Bright*" might affect "the appropriate deference to afford the FCC's interpretation of Note 11," ECF No. 57 at 2—an interpretation Gray has challenged throughout this case, *see* ECF No. 21 at 32–40; *see also id.* at 40–46 (related fair notice claim). Consistent with the Court's order, the parties' supplemental briefing on *Loper Bright* concluded August 14, 2024. *See* ECF No. 60.

That same day, Gray moved for leave to file supplemental briefing concerning the effect of the Supreme Court's decision in *Jarkesy*. Mot. 9. Until then, Gray had never at any point in this case argued that it had a "right to a jury trial" concerning its compliance with Note 11; that "the Seventh Amendment prohibited Congress from assigning adjudication of the [Note 11] claim to the FCC"; or that, accordingly, the FCC lacked "the authority . . . to conduct the proceeding that led to the forfeiture"

at issue in this case. Mot. 2. All of the issues as to which Gray seeks supplemental briefing it raises now for the first time.

## ARGUMENT

### I. GRAY SHOULD NOT BE PERMITTED TO RAISE NEW ISSUES IN SUPPLEMENTAL BRIEFING.

Under longstanding Eleventh Circuit precedent, "[p]arties must submit all issues on appeal in their initial briefs." *United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000); *see* Fed. R. App. P. 28(a)(5); 11th Cir. R. 28-1(h). As to issues "properly raised in the initial briefs," the Court "permits parties to submit supplemental authority on 'intervening decisions or new developments,'" or to "seek permission of the court to file supplemental briefs on [such] new authority." *Nealy*, 232 F.3d at 830 (emphasis removed); *see also* 11th Cir. R. 28-1 I.O.P. 5 (requests for supplemental briefing); 11th Cir. R. 28-1 I.O.P. 6 (citation of supplemental authority). As a rule, however, parties are not allowed to "raise *new* issues at supplemental briefing"—not even when such issues "arise based on . . . intervening decisions or new developments." *Nealy*, 232 F.3d at 830 (emphasis added).

There is a limited exception to this general rule: "Where precedent that is binding in [the] circuit is overturned by an intervening decision of the Supreme Court, [this Court] will permit an appellant to raise in a timely fashion thereafter an issue or theory based on that new decision while [its] direct appeal is still pending in this Court." *United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015) (en

banc). As *Durham* stresses, however, this exception does not apply to "any issue that was not previously foreclosed by binding precedent." *Id.* at 1331.

Here, this Court's request for supplemental briefing on *Loper Bright* was consistent with *Nealy* and *Durham*: supplemental briefing concerned an issue presented in Gray's opening brief, as well as an intervening decision that overruled previously binding precedent. *See supra* 4.

By contrast, the supplemental briefing Gray requests is foreclosed under those precedents. Gray does not claim to have challenged the constitutionality of the FCC's enforcement procedures, or of the statute authorizing those procedures, in its opening brief or at any other time before August 14. Nor does Gray assert that binding precedent foreclosed it from raising its new claims before now.[2]

Instead, without addressing this Court's case law, Gray seeks to justify supplemental briefing by arguing that "the [Supreme] Court's holding and reasoning in *Jarkesy* are directly relevant" to this case, Mot. 2; that "absent an order from this Court allowing supplemental briefing . . . , Gray will have no recourse . . . to address the impact of *Jarkesy*," *id.*; and that "allowing further supplemental briefing will not prejudice any party or unduly delay this appeal," *id.* at 3.

---

[2] Nor can Gray credibly contend that it brought *Jarkesy* to the Court's attention "in a timely fashion," as *Durham* requires. 795 F.3d at 1330. Gray waited a full six weeks from the Supreme Court's *Jarkesy* decision to request supplemental briefing in this case. *See supra* 1, 3.

Except as to Gray's recognition that it may not submit supplemental briefing without leave, we disagree with those assertions. For one, Gray ignores the harm to judicial economy inherent in its request for the Court to consider a new set of constitutional issues after already having reviewed extensive briefing, and conducted oral argument, on the issues raised in Gray's opening brief. Likewise, contrary to Gray's claim that "[t]he FCC will not suffer any cognizable harm from" supplemental briefing, Mot. 3, the respondents would be prejudiced if required to defend the constitutionality of the FCC's power to impose monetary forfeitures on an accelerated schedule now, when, like the Court, the government has already devoted extensive resources to addressing Gray's earlier claims.

In any event, the justifications Gray offers for supplemental briefing are unavailing. Gray could have raised the constitutional challenges it now seeks to brief at any previous stage of this case—and, indeed, at any point during the underlying administrative proceeding. The *Jarkesy* litigation started in the Fifth Circuit before the FCC's proceeding began, and the Fifth Circuit issued its decision, and denied en banc rehearing, all before Gray brought this appeal. Briefing in this case was still underway, moreover, when the Supreme Court granted certiorari in *Jarkesy*.

This Court has repeatedly declined to consider new claims in analogous circumstances. For example, in *McGinnis v. Ingram Equipment Co.*, 918 F.2d 1491 (11th Cir. 1990) (en banc), the Court declined to entertain a supplemental defense that the defendant-appellant raised for the first time at oral argument. The Court credited

the assertion that "no one could have predicted the Supreme Court's resolution of the . . . case" that gave rise to the disputed defense. *Id.* at 1496. But the Court nevertheless declined to consider it, reasoning that—in part because the issue was litigated in the Fourth Circuit before "the time of appeal"—it had long been "available to [the defendant-appellant]," who should have raised it earlier. *Id.* Similarly, in *Curtis Investment Co. v. Commissioner of Internal Revenue*, 909 F.3d 1339 (11th Cir. 2018), the Court declined to address a challenge that the appellant "could have brought . . . during or after Tax Court proceedings prior to appeal" but "instead rais[ed] for the first time in supplemental appellate briefing." *Id.* at 1354.

It does not change this analysis that Gray's new claims are constitutional ones. As is well settled, even constitutional rights "may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Bennett v. Jefferson Cnty., Ala.*, 899 F.3d 1240, 1251 (11th Cir. 2018) (quoting *Henderson v. United States*, 568 U.S. 266, 271 (2013)). Indeed, *Nealy* itself involved the forfeiture of a constitutional claim. *See* 232 F.3d at 830 (forfeited claim was that "*Apprendi* require[d] the indictment to include the element of drug quantity," a claim predicated on the Fifth Amendment right to be charged by grand jury indictment). Of particular relevance here, "the right to an Article III adjudicator can be waived or forfeited." *PB Legacy, Inc. v. Am. Mariculture, Inc.*, 104 F.4th 1258, 1267 (11th Cir. 2024) (Jordan, J., concurring); *see Wellness Int'l Network, Ltd. v. Sharif*, 617 F. App'x 589, 590 (7th Cir. 2015) ("The Supreme Court's decision [at an earlier stage of the

case, 575 U.S. 665 (2015)] made clear that a litigant's right to an Article III adjudicator is 'a personal right' . . . [that] can be waived through consent. As such, this personal right can also be forfeited if not properly raised." (citation omitted)). Thus, because Gray's constitutional claims have been available since well before the start of this appeal, Gray should not be permitted to raise them for the first time in supplemental briefing now.

## II. THE COMMUNICATIONS ACT INDEPENDENTLY BARS CONSIDERATION OF GRAY'S NEW CHALLENGES.

Supplemental briefing is unwarranted for the independent reason that—as we have previously explained, *e.g.*, ECF No. 32 at 26; ECF No. 59 at 10—the Communications Act forecloses judicial review of issues on which the FCC had no "opportunity to pass" during the administrative proceeding. 47 U.S.C. § 405(a). *Jarkesy* was fully briefed in the Fifth Circuit before the Commission issued the notice of apparent liability to Gray, and the Fifth Circuit decided *Jarkesy* before the Commission issued the *Order* under review. *See supra* 3. Gray could have raised the constitutional claims it now contemplates during the FCC's proceeding. Instead, Gray surfaced with new claims on appeal, at the eleventh hour, depriving the agency of its statutory right to consider Gray's claims in the first instance.

It is well settled that parties may forfeit even constitutional claims under Section 405(a) if they do not bring them to the Commission's attention in the administrative proceedings before the agency. *See, e.g.*, *Viasat, Inc. v. FCC*, 47 F.4th

769, 778 (D.C. Cir. 2022) ("all claims," including constitutional ones, must be "'flagged' or 'teed up' before the Commission . . . before they may be pursued in court"); *see also Bennett*, 899 F.3d at 1251 (constitutional rights may be forfeited). For this reason, too, further briefing is not justified.

## CONCLUSION

The Motion for Leave to File Supplemental Briefing should be denied.

Dated: August 26, 2024

Respectfully submitted,

/s/ *William J. Scher*

P. Michele Ellison
   *General Counsel*

Sarah E. Citrin
   *Deputy Associate General Counsel*

William J. Scher
   *Counsel*

Robert J. Wiggers
   *Attorney*

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave. NW
Washington, DC 20530

FEDERAL COMMUNICATIONS COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

*Counsel for Respondent
   United States of America*

*Counsel for Respondent Federal
   Communications Commission*

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Eleventh Circuit Rule 32-4:

   ☒ this document contains 2425 words, *or*

   ☐ this document uses a monospaced typeface and contains _ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman, *or*

   ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

/s/ *William J. Scher*
William J. Scher
*Counsel for Respondent*
*Federal Communications Commission*